## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10021-NMG |
| | ) | |
| SHIH-MING SHIUE, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT SHIH-MING SHIUE'S SENTENCING MEMORANDUM

Defendant Shih-Ming Shiue respectfully submits this memorandum in support of his request that the Court impose a sentence of three-years probation with a condition of 10 months' home confinement. In light of Mr. Shiue's recent payment of $575,000 in satisfaction of the forfeiture allegation, Mr. Shiue also requests that the Court not impose a fine or restitution. Together with this memorandum, Mr. Shiue is also submitting for the Court's *in camera* review a Supplemental Sentencing Memorandum describing the details of the cooperation he provided to federal and state law enforcement during the past six years in a variety of investigations.

## I.    INTRODUCTION

This is an exceptional case. With the exception of a short period when Mr. Shiue failed to abide by the changes made by the Commerce Department to a complicated regulatory scheme regarding the imposition of anti-dumping duty on brake rotors imported from China, Mr. Shiue has lived the American dream. He came to the United States at the age of 24 from Taiwan -- where he was born, attended school, and honorably served in the Air Force -- in search of a better life. He became a United States citizen. Through dint of hard work, Mr. Shiue worked his way up from being an auto mechanic to owning his own gas station. Once there, he had the idea of importing brake parts directly

from China to cut out the middleman and thereby save his customers money. He acted on this idea, establishing and building a successful business importing brake rotors and drums from China for resale to auto parts distributors in the United States.

Mr. Shiue has been married for more than 25 years, has raised two daughters, both of whom are college students and depend on Mr. Shiue for financial support. He wants nothing more than to continue to support his wife and daughters.

Within days of the search of Mr. Shiue's business on December 4, 2001, Mr. Shiue embarked on a course of conduct to repay the government for his crimes -- by providing truthful information about his own conduct and by agreeing to cooperate proactively with federal and state law enforcement agents. With his unique blend of language skills and international business experience, Mr. Shiue has provided extraordinary assistance to federal and state law enforcement in Massachusetts for more than six years. In fact, in recognition of the contributions made by Mr. Shiue, Bureau of Immigration and Customs Enforcement Senior Special Agent Edward Salvas is planning to appear at Mr. Shiue's sentencing to speak on his behalf.

With respect to the proceeding in this Court, Mr. Shiue pled guilty to each count of the indictment and has in no way sought to avoid the consequences of his wrongful actions. Although Mr. Shiue owns his home together with his wife, he has satisfied the forfeiture allegation through a cash payment of $575,000 with funds he obtained by mortgaging his home.

This case is not lacking for irony. Although not ultimately material in terms of the determination of Mr. Shiue's Base Offense Level under the Sentencing Guidelines, the "loss" agreed to by the parties in the plea agreement actually overstates the true

impact of Mr. Shiue's conduct.  Essentially, the primary company whose brake rotors Mr. Shiue imported using falsified documentation to avoid paying anti-dumping duties, Zichen, was later found by the United States government not to have been dumping brake rotors into the U.S. market.  Had Mr. Shiue retained an attorney to assist him with the changes made by the Commerce Department to the duty schedule for brake rotors, Mr. Shiue would have been entitled to a refund of any anti-dumping deposit paid at importation for rotors manufactured by Zichen.  Accordingly, taking into account the correct status of Zichen, the more accurate loss figure is $2,566,572, which is just over the low-end of the range for Base Offense Level 24 ($2.5 million to $7 million).

In light of the factors provided in 18 U.S.C. § 3553, a sentence of probation with appropriate conditions meets the various deterrent and retributive goals of sentencing while also recognizing that:

- Mr. Shiue has provided extraordinary assistance in federal and state investigations, and that his assistance has resulted in tangible results.

- Mr. Shiue has fully accepted responsibility for his actions and has satisfied in full the forfeiture allegation.

- Mr. Shiue's family circumstances make him an indispensable provider for his wife and two college-student daughters.

- Mr. Shiue's conduct has had significantly less serious consequences than indicated by a mechanical Guidelines calculation based on a "loss" figure that does not account from the retrospective nature of the anti-dumping duty regime.

- Mr. Shiue ran afoul of a complicated and changing regulatory regime and has done everything possible during the past six-years to make amends for his mistakes.

Society's interests will be best served by a sentence that allows Mr. Shiue to continue to provide for his wife and children.  Mr. Shiue, additionally, has no history of criminal behavior and presents an extremely low likelihood of recidivism.  Finally, a

sentence of probation could allow Mr. Shiue to continue his extraordinary assistance to state and federal law enforcement. Under any sentencing system that takes into account the goals of deterrence, retribution, and rehabilitation in view of the overall good of society, the proposed sentence is appropriate.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    Indictment and Plea Agreement

Mr. Shiue first became aware of this investigation when his business was searched on December 4, 2001. Mr. Shiue was in China at the time on business. When he returned to the United States, Mr. Shiue made arrangements to meet with the investigating agents in Chicago.

Although Mr. Shiue had been cooperating for close to two years and was willing to proceed by way of an Information, the government formally charged Mr. Shiue in an Indictment filed November 20, 2003, with eight counts of entry of goods by means of false statement, in violation of 18 U.S.C. § 542; one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; and one count of bribery of public officials and witnesses, in violation of 18 U.S.C. § 201. The Indictment also contained a forfeiture allegation under 18 U.S.C. § 982(a)(2)(b) and 21 U.S.C. § 853(p). On October 28, 2005, Mr. Shiue pled guilty to all ten counts of the indictment. Recently, Mr. Shiue settled and has satisfied in full his obligation under the forfeiture allegation.

### B.    Education and Work Experience

Mr. Shiue was born in 1953 in Keelong, Taiwan. He was raised and educated there, ultimately studying electrical engineering in technical school. He left school prior to graduation, however, to fulfill his military-service obligation. During his three years of service in the Taiwanese Air Force, Mr. Shiue worked as a mechanic on F-104 fighter

aircraft and rose to the rank of Sergeant. After his honorable discharge from the Air Force in 1977, Mr. Shiue decided to immigrate to the United States in order to seek a better life. He arrived in 1978 and joined his sister, Pearl, and his parents, who had settled in Cambridge, Massachusetts.

Within 10 days of his arrival in the United States, he had secured employment as a garage helper at Salem Foreign Auto Repair. This was his first job in an auto mechanic's shop, but he was able to build on the knowledge he obtained while serving in the Air Force. For the next four years, Mr. Shiue held several jobs in various auto repair shops. With each job, he increased both his responsibility and his knowledge of the business. In 1982, while working as a manager of the Arco gas station on Memorial Drive in Cambridge, he had the opportunity to buy the Shell gas station at the intersection of Magazine Street and Memorial Drive in Cambridge.

Operating a gas station that is open 24 hours per day is a taxing business. At a minimum, Mr. Shiue worked from 6 a.m. to 7 p.m. daily, but he worked additional time when an employee did not show up for work, when equipment malfunctioned, when it snowed and the property required plowing, when the station was robbed (which occurred on a nearly monthly basis and, one time, twice in the same night), or for a myriad other reasons. He often worked weekends and holidays.

In 1986, while changing a brake rotor in the Shell station's shop, Mr. Shiue noticed that the rotor had been manufactured in Taiwan. He instantly thought to himself, "I can import these things myself" and thereby cut out the middleman. After investigating the business, Mr. Shiue came to realize that there was not just one, but three or even four, middlemen involved in the importation of Taiwanese brake rotors. He

knew that there were substantial savings to be had by importing directly. Because he was the end user of the brake rotors, he was confident that he knew what people wanted with respect to that product. And because he was Taiwanese-American, he knew that he could navigate the local business environment in Taiwan as well as or better than other importers. So, together with two partners, Mr. Shiue formed his first company, MPW Imports. (The company took its name from the initials of the three partners.) MPW began importing Taiwanese brake parts in 1988, and continued to do so until 1991. In 1991, the foreign exchange rates between the U.S. and Taiwan changed drastically, making the importation of Taiwanese brake parts into the United States uneconomical. However, good deals could still be had in mainland China, and so Mr. Shiue traveled to China for the first time in 1992 for the purpose of sourcing brake parts. During one of his earliest trips to China, Mr. Shiue discovered a brake part manufacturer called Zichen, with which he maintained a long business relationship.

In 1994, Mr. Shiue and his partners in MPW decided to go their separate ways. Mr. Shiue and his sister, I-Hwa, consequently started a new company, CAI Inc., to source brake parts from China. Mr. Shiue had a 45% interest in CAI, as did I-Hwa, and their sister Pearl had the other 10%. In 1995, Mr. Shiue and I-Hwa established a second company, TLC International, to import plastic toys also made in China.

In addition to its own importation business, CAI also acted as an agent for three China-based companies that exported brake parts to the United States: China Machinery International, LC Trading, and SK Trading. Each of these companies belong to a Chinese national named Long Zhang. Mr. Shiue had no ownership interest in these

companies.  Instead, CAI received a 5% commission on shipments into the United States by those companies.

Today, TLC International no longer exists.  CAI has ceased all business operations and exists solely for the purpose of attempting to collect on a $3.8 million debt owed to it by Universal, which had been CAI's largest customer prior to its filing for bankruptcy protection.  Currently, Mr. Shiue is employed by his brother Wei's company, Ziway.  As a salesman for Ziway, Mr. Shiue remains engaged in the importation of brake rotors and drums into the United States.  In this capacity, Mr. Shiue continues to travel to China several times a year and is responsible for generating most of Ziway's revenue. Wei's companies currently employ approximately 10 people.  Mr. Shiue believes that without his active involvement, these companies would soon fail, putting those ten people out of their jobs.

### C.     Family Responsibilities

Mr. Shiue met Siaw Jin Choo in 1982, and the two were married on March 26, 1983, not long after his purchase of the Shell station.  Mrs. Shiue has essentially been a homemaker and stay-at-home mother since her marriage.  The couple have two daughters.  Ting Ting Shiue is 20 and a student at the Universe of Massachusetts.  Ying Ying Shiue is 18 and a student at Boston University.  Mr. Shiue is responsible for the payment of both girls' tuition and living expenses.

Mr. Shiue's father passed away in 2007.  His mother, who is 84 years old, is in very bad health.  She suffers from Parkinson's disease and has had a brain aneurism.  Mr. Shiue provides her with significant emotional support, visiting her several times per week.  Except for one sister, Mr. Shiue's entire family is in the greater Boston area and the family is very tight-knit.  As testament to the importance of Mr. Shiue in their lives,

many of his family, friends, and business associates have provided the Court with letters voicing their support for Mr. Shiue.  Those letters are attached hereto as Exhibit A.

**III.**   **ARGUMENT**

In order to arrive at an appropriate sentence, the Court should apply the Guidelines to determine an "advisory" sentencing range and then apply the factors set forth in 18 U.S.C. § 3553(a) to the facts of the case to determine whether "to exercise its discretion to impose a non-guideline sentence."  *United States v. Gilman*, 478 F.3d 440, 445 (1st Cir. 2007) (describing the sentencing process following the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005)) (internal citation omitted).

The primary directive under § 3553(a) is that the Court should impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing.  These purposes include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provided just punishment, to create adequate deterrence, to protect the public from future crimes committed by the defendant, and to provide the defendant with necessary treatment and training.  Section 3553(a) also directs the Court to consider other factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentence available, the Guideline range, pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

As indicated in the Presentence Report, application of the Guidelines to Mr. Shiue's case initially yields a Total Offense Level of 23 and Criminal History Category I, which gives an advisory sentencing range of 46-57 months.  Mr. Shiue respectfully

submits that these considerations, which are described in detail in the following paragraphs, justify departure from the advisory range, under both the Guidelines and § 3553(a), to probation with appropriate conditions.

**A.    Mr. Shiue Has Rendered Substantial Assistance to Federal and State Law Enforcement**

Mr. Shiue's Plea Agreement states that the Government may move for a downward departure pursuant to Guidelines § 5K1.1 should it determine that Mr. Shiue has provided substantial assistance in other criminal investigations.  Mr. Shiue has provided assistance with various investigations for the past five years and remains willing and able to provide further assistance.  As noted above, given the confidential nature of this information, Mr. Shiue separately has submitted for the Court's *in camera* review a Supplemental Sentencing Memorandum describing his assistance in various government investigations.  Even without a § 5K1.1 motion, Mr. Shiue's assistance warrants a reduced sentence pursuant to 18 U.S.C. § 3553(a) and Guideline § 5K2.0 because of the nature and extent of his cooperation and the assistance to law enforcement that has resulted.

**B.    Mr. Shiue Has Fully Accepted Responsibility, Including Full Satisfaction of the Forfeiture Obligation**

On October 28, 2005, Mr. Shiue pled guilty to all counts alleged in the indictment.  More recently, Mr. Shiue, his sister I-Hwa, and the Government entered into a settlement agreement regarding the forfeiture allegation included in the indictment.  As stipulated in their respective Plea Agreements, Mr. Shiue and I-Hwa are jointly and severally liable for loss in the amount of $5,065,00.  The Government and the Shiues agreed to settle this liability for a total of $1,150,000, to be paid together by Mr. Shiue and I-Hwa prior to their sentencings.  This agreement reflected the reality that the amount

of loss suffered by the United States is substantially less than the stipulated amount. It also reflects Mr. Shiue's limited ability to pay. The full amount agreed in the settlement has been paid. Counsel for Mr. Shiue delivered a check in the amount of $575,000 for Mr. Shiue's half of the forfeiture amount to the United States Attorney's office on January 4, 2008.

As a consequence of these action, Mr. Shiue has accepted responsibility for his crime.[1] *United States v. Deppe*, 509 F.3d 54 (1st Cir. 2007) ("Pleading guilty in advance of trial and truthfully disclosing the details of all relevant conduct usually will constitute substantial evidence that a defendant has accepted responsibility.").

**C.      Mr. Shiue's Family Circumstances Justify Imposition of a Sentence of Probation**

As noted above, Mr. Shiue is solely responsible for providing for his wife and two daughters. Mrs. Shiue has for the past 25 years been a homemaker and mother. It is not realistic to expect that after more than two and a half decades out of the workforce she could immediately reenter the workforce and provide for the family in the way that Mr. Shiue has. Additionally, both of Mr. Shiue's daughters are college students. Mr. Shiue pays their tuition and provides them with a reasonable amount for their living expenses. A term of imprisonment would jeopardize their ability to remain in school and complete their degrees. Finally, Mr. Shiue's extremely ill mother relies on him for emotional support.

The goals of sentencing will be best served in this case with a departure from the advisory range, under both 18 U.S.C. § 3553(a) and Guideline § 5H1.6, based on Mr. Shiue's family responsibilities.

---

[1] The total offense level and Guidelines range indicated in the Pre-Sentence Report takes into account Mr. Shiue's acceptance of responsibility under Guideline § 3E1.1.

**D.** **The Consequences of Mr. Shiue's Conduct Are Less Serious Than Mechanical Application of the Guidelines Would Indicate**

In his Plea Agreement, Mr. Shiue agreed that the value of the "loss" generated by the crime was $5,065,000. As indicated above, this amount actually overstates the monetary injury to the United States.

The purpose of the antidumping regulatory scheme is to prevent or remedy the "dumping" of foreign goods into the U.S. market. Dumping is the sale of goods in the U.S. at prices lower than the value at which they are sold in other markets, also known as "less than fair value." The antidumping regulatory regime aims to achieve this result by assessing an antidumping duty at an amount equal to the difference between the actual price and fair value, also called the "antidumping margin."

Antidumping duties are assessed by a unique, "retrospective" method, which differs from the assessment of regular customs duties. In the U.S. antidumping duty regime, the duty is fixed after the goods have been imported although a "deposit" is made at the time of importation. As stated by the Commerce Department, which, with the International Trade Commission, has responsibility for antidumping duties:

> [u]nlike systems of some other countries, the United States uses a "retrospective" assessment system under which final liability for antidumping and countervailing duties to be assessed is determined *after merchandise is imported*. Generally, the amount of duties is determined in a review of the order covering a discrete period of time.

19 C.F.R. § 351.212(a) (2006) (emphasis added). On an annual basis, the deposit rate is set, based on a provisional estimate of antidumping margin. Any manufacturer, exporter, or importer may request a review of that rate. Commerce then reviews the conduct of the exporter during the year preceding the request. After this review -- which can take between 12 and 18 months -- a final rate is set at the final antidumping margin, the duty

11

is assessed, and the entry of goods is "liquidated" by Customs. The deposit is considered

security for later payment of the assessed duty; it is not itself considered payment of the

duty or revenue to the Government.  The final duty may be assessed at the cash deposit

rate if no relevant party requests a review (*i.e.*, all relevant parties "default").

Alternatively, the final duty may be set below the deposit rate.  If this is the case, the

difference between the deposit rate and the actual antidumping duty rate is refunded with

interest.  According to Commerce:

> The amount of the dumping margin does not become
> "fixed" within the meaning of Article 11 of the
> Antidumping Code, and thus antidumping duties are not
> assessed, until the Department has completed an
> administrative review. At that time, duties would be
> assessed at the rate established in the final results of
> administrative review. If an administrative review results in
> the "fixing" of a lower rate than had been deposited, the
> difference would be refunded in accordance with both U.S.
> law and the GATT Antidumping Code. If no review of
> particular entries is requested, however, the cash deposit
> rate becomes the "fixed" rate, and the entries will be
> liquidated at that rate.

54 Fed. Reg. 12742, at 12756 (March 28, 1989).  Of course, the antidumping duty rate

can be set at zero, requiring a return of the entire deposit plus interest.

The indictment alleges that the Mr. Shiue and his sister I-Hwa imported brake

rotors by means of false documents from January 31, 1997 through December 5, 2001.

Attached hereto as Exhibit B is a spreadsheet listing all of the entries of brake rotors by

the Shiues' businesses during this time period involving false invoices.  All of the files

for these entries were seized during the execution of a search warrant at the Shiues' place

of business in December 2001.

Chronologically, this conduct falls into two time periods. During the first time

period, January 31, 1997, through November 11, 1999, the Shiues used falsified China

National invoices to import brake rotors manufactured by Zichen. China National had a zero antidumping duty rate during this time, while Zichen's antidumping rate was assessed at 8.51%. During the second time period, November 12, 1999 through the end of 2001, Zichen's antidumping duty rate was reduced to zero. See 64 Fed. Reg. 61581, at 61589 (Nov. 12, 1999). After Zichen's rate was reduced to zero, the Shiues' businesses imported brake rotors manufactured by both Zichen and other exporter/manufacturers. For those brake rotors obtained from other manufacturers, the Shiues' businesses used falsified Zichen invoices to avoid paying the antidumping duty.

In arriving at the $5,065,000 loss figure, the parties used an antidumping duty rate of 8.51% for those entries that took place prior to November 12, 1999, representing Zichen brake rotors imported using China National invoices. For entries after that date through the end of 2001, the default antidumping duty rate of 43.32% was used for the false Zichen invoices.

The $5,065,000 loss figure, which is intended to represent the cash deposit evaded, is not the true measure of actual loss, or harm, to the Government. During the time period from January 31, 1997, through November 11, 1999, the Shiues would have actually been entitled to petition Commerce for a refund of the 8.51% antidumping duty imposed on all of the Zichen brake rotors imported during this period because Zichen, in fact, was not dumping brake rotors into the U.S. market. Accordingly, Exhibit B shows that the amount of the antidumping duty associated with these entries should have been zero.

For the entries that took place during from November 12, 1999, through the end of 2001, Exhibit B uses the default rate of 43.32% to calculate the antidumping duty that

should have been paid, which yields an adjusted  the amount of antidumping duties actually avoided of $2,566,572.68.  However, even this figure may be an overstatement of the actual loss suffered because some of those manufacturers may have ultimately been assigned an antidumping duty rate of less than 43.32%.

Section 3553(a) mandates that the Court impose a sentence that reflects the seriousness of the offense.  Here, a reasonable sentence should take into consideration the fact that the loss calculation in the Guidelines substantially overstates the seriousness of the offense.

**E.    When Faced With a Complicated and Changing Regulatory Regime, Mr. Shiue was Led Astray by a Customs Broker He Thought Would Help Him Navigate It**

As the preceding section demonstrates, the United States' anti-dumping regulatory regime is complicated.  It also is constantly in flux, as deposit rates are set, deposits are collected, final rates are set, and, if necessary, deposits are returned with interest.  It cannot be questioned that Mr. Shiue reacted to this complicated and changing regulatory regime in the wrong way.  But it similarly cannot be questioned that the regulatory regime is an imposing one for a lay person.

When faced with the seizure of SK Trading's five containers of brake parts (for which Mr. Shiue acted as agent), Mr. Shiue sought the assistance of Robert Slapinski, a customs broker.  Mr. Slapinski indicated that he knew a Customs official who could "fix" SK Trading's problem.  That official was Trade Inspector Soto.  Facing pressure from the manufacturer for payment and pressure from the U.S. customer for the brake rotors, Mr. Shiue plainly erred in following the advice of Mr. Slapinski and offering a bribe to Trade Inspector Soto to release the seized containers.  Mr. Shiue respectfully asks the court to

consider his error in the broader context of his life of hard work and dedication to his family.

## <u>CONCLUSION</u>

The need for just punishment, the need for deterrence, the protection of the public and the rehabilitation of the defendant would all be advanced by a sentence of probation with appropriate conditions. Mr. Shiue's offense was non-violent, so he does not pose a threat to the public. He has no prior criminal history and has suffered the consequences of his crime, so he does not pose a likelihood of recidivism. A sentence of probation with appropriate conditions will ensure that he is closely monitored for a substantial period of time. The proposed sentence will not undermine the seriousness of his offense, but will serve the public interest in that it will allow him to continue to provide for his family.

For the foregoing reasons, Mr. Shiue respectfully requests that the Court impose a sentence of probation with appropriate conditions, and no fine or restitution.

/s/ *Geoffrey E. Hobart*
Geoffrey E. Hobart
BBO No. 547499
COVINGTON & BURLING LLP
1201 Pennsylvania Ave. NW
Washington, DC 20004
(202)662-6000
ghobart@cov.com

Dated: January 28, 2008.

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 28, 2008.

/s/ *Geoffrey E. Hobart*
Geoffrey E. Hobart
BBO No. 547499
COVINGTON & BURLING LLP
1201 Pennsylvania Ave. NW
Washington, DC 20004
(202)662-6000
ghobart@cov.com

Dated: January 28, 2008.

16

To whom it may concern:

In the 26 years I have known my husband, Ming has proved to be a very good man. He is a caring son, devoted husband and loving father. He is kind and considerate to those around him but he is by no means a perfect man.

The way Ming cares for his parents demonstrates how much family means to him and how he is every bit a family man. My father-in-law had colon cancer and intestinal tuberculosis which affected his bowel movements. Ming would rush from work to clean his father up after having an accident. He would consistently deliver snacks late at night to Winchester and Youville Hospital during the times his father was hospitalized. When his mother suffered a ruptured brain aneurysm and was hospitalized for 4 ½ months at one stretch, Ming would visit her almost every day. He would rub her hands, kiss her, helped in caring for her, and continued to do so even after she returned home. He is the oldest son of the Shiue family and in Chinese tradition; the eldest son is the head of the family. Ming carries a great sense of responsibility with his position. He is always willing to share with his siblings, going out of his way to make sure they have everything they need.

He works hard to provide for our family and as he is our sole source of income, he takes his job very seriously. He is and has been the most loving father to our two daughters who are currently college students. He works hard to further his trading business while I manage the household. Whenever I get upset and frustrated with the girls, Ming often acts as our buffer. The girls will go to him for comfort as they think he is more understanding and easier to talk to. While I tend to be bothered by little things, Ming helps me to see the bigger picture, and to take a look at how it all fits into our lives. He is my companion, my counsel and the one I lean on.

I helped Ming run a gas station for 14 years during the earlier years of our marriage and in that time I witnessed the extent that Ming's kindness reached. Though he would work long hours, he went out of his way to help many foreign students tow and fix their broken-down cars. He once gave a disadvantaged taxi driver a turkey to bring home for his family's Thanksgiving dinner. He helped employees pay their tuition so they could complete their college studies. Ming dared to hire an ex-convict while other businesses refused. He also hired Vietnamese and other immigrants who spoke little English to work at the gas station and repair shop. I was impressed and taken by his displays of kindness and selflessness. We were by no means considered wealthy at that time but he was still generous with whatever resources he could offer. He believes in giving people a chance and he believes in second chances.

Whenever problems arise, Ming often discloses only as much as he feels is necessary, wanting to spare me the burden and worry. He always tries to find solutions on his own. For the mistakes he has made, he accepts full responsibilities. He wants me to stay calm so we can keep our family together.

Though I cannot describe completely by words what kind of person my not-so-perfect husband is, I can assure you that Ming is a GOOD man. I have no regrets in marrying him and will gladly be by his side through the ups and downs. Reading a devotional message, I came across Scotty Smith's words "God pursues us in our restlessness, receives us in our sinfulness, holds us in our brokenness". I humbly ask for your understanding and leniency in handling Ming's case. I pray for God's strength in facing whatever the outcome.

Sincerely,

Siaw Jin C. Shiue

To whom this may concern:

I am soon to be 21 years and on the cusp of venturing out to make my own way in the world. I am so lucky to have been blessed with parents that have prepared me for this unforeseeable journey in every way possible and to the best of their abilities. From them I have gained everything I need to succeed in life. My father has taught me most through his actions, my own observations and conclusions.

He has always been a constant traveler for business. At times he will venture out to China for a month at a time before returning home. In my earlier youth, I believed my father cared more about work than he did about his family but my perspective has changed a great deal since then. I know that every time my father leaves home, he is making a sacrifice for us and for his business. It is clear that he loves being at home, sitting in his chair, reading the newspaper or watching TV. He loves taking us all out to eat and is constantly proposing that we dine out but these are missed opportunities when he is overseas. He is one of the hardest working people I know and every time he leaves is a sacrifice made out of love. He is dedicated to his work because he is first dedicated to providing for his family.

I remember during every family vacation we took, my father would be the first to pull out money to toss into the hats of street performers or hand to those panhandling at corners. Always before giving the money, he would try to have my sister or me to be the ones to deliver it. I learned from him that there was nothing to fear in the differences of others. That it was important to be compassionate and always show kindness to others.

In all this time that I have spent growing up, my father has never once spoken harsh words or lashed out at me in anger. I have never seen him act in such a manner towards any other person. When I first learned of this situation upon returning home one day to find a notice attached to our front door with red tape. The document revealed enough information for me to realize that my father was in a very serious situation and upon confronting my parents, it was I that showed anger while my father calmly reassured me that he was handling the situation. He spoke of the whole thing very straightforwardly, saying he made a mistake and now he had to deal with the consequences. I must say that I wanted him to be angry for it all seemed very unfair to me but I know his way and attitude in dealing with this whole situation is a lot better than how I would have expected or preferred.

Though my parents have kept me in the dark to many of the details, I realize the situation my father has unintentionally put himself in and what is on the line but I also have come to understand that like everyone he isn't perfect and will make mistakes. One of his top priorities is to provide for his family and give us a comfortable life. In this case, he has made a mistake that has already and will undoubtedly have costly circumstances. If there is one thing I have come to learn about my father through this situation is that he understands and acknowledges what he did wrong and has learned an invaluable yet imperative lesson. My dad is a man who learns from his mistakes, especially when his life and his family are at risk.

Sincerely,

Christina T. Shiue

To Whom It May Concern:

I am eighteen years old and just graduated from Lexington High School last spring. Currently, I am a student at Boston University in the College of General Studies. Having just left home to live in the dorms at college, it is easy to miss my friends, family, and high school. However, I know that my education and my parents have prepared me well for anything that comes my way.

My father, Shih Ming Shiue, has always been the strong figure in the family, holding everyone together. As I have watched him take care of his ailing parents over the years, I have witnessed how compassionate my father is. After a long day of work, he goes over to his sister's house to help in whatever way he can in caring for his parents. He encourages them to exercise and always has a way of lightening their moods. Their eyes brighten when they see their son enter the room. He has always been the one comforting me and smoothing things over when I argue with my mother, making him the peacemaker of the family.

My dad is also the most hard-working person I know. Although the language barrier sometimes can be extremely frustrating for my father, he has never complained but instead works through it. His flaws have never disabled him from reaching his goals, but only make him strive to be better and to work harder. My dad constantly sacrifices himself and his life for his work. Even on weekends or at home, he is on the telephone with business partners in China or making long distance phone calls. I know this is all to make a better life for his family though. It is out of love for his wife and children that he is so dedicated to his work. He has other ways to make it up to us though, but taking us out to dinner or bringing home presents when he returns from a business trip.

Sometimes, my dad totally misses the mark by bringing home something that my sister and I would never use, but we know that it's the thought that counts. He tries. He makes the effort to try to be a better father, a better husband, a better man. When we tease him about his mistakes or when he mispronounces a word (which is quite often), he has never gotten angry but asks for the correct pronunciation or what exactly he did wrong. Once my dad understands his mistake, he makes the effort to not make the same mistake again. That's what I admire most about him. He humbly acknowledges his faults and then, he changes. My dad isn't perfect. No one is, but my dad constantly strives to be a better person. He's a good man with a kind heart and always means well. Now, he doesn't always do the right thing; he makes mistakes, but he also makes great comebacks by learning from them.

Tiffany Ying-Ying Shiue

To whom it may concern:

January 17, 2008

My name is Shih-Wei Shiue.    I am the brother of Shih-Ming Shiue (Ming).

Ming always works very hard in whatever job he is in, he came to US in 1978 and held three jobs for 4 years, 7 days a week to fund his first business, Magazine Beach shell gas station. He has never stop working since. All people works for him likes him very much. Ming is a very kind person he always go out his way to help the people in need.

Ming has two girls and both of them are in college now. Ming is a great father he as always help his daughter with their home work and projects. As single income father he as support the family throughout all these years. Both of the daughters are well educated and have excellent grades.

Ming is also the son that respect and took care of the parents. My father has colon cancer and has been in and out of hospital for years until last Jan when he passed away. Ming is always the one stay in the hospital, cook the food my father likes and bring it to the hospital. My mother has Parkinson decease in wheel chair for years. Every morning and every evening Ming will visit her. When she sees Ming her memory will come back and break out a big smile.

When I was a college student Ming also supported me to finish my electrical engineering degree. He works long hours to help finance my college education and has never ask anything in return.

Ming is a hard worker, a good father, a friend that can be trusted, a great son and a very good brother.

Sincerely,

Shih-Wei Shiue

1/17/08

To whom it may concern:

January 13, 2008

My name is Beehwa Shiue.    I am the sister of Shih-Ming Shiue (Ming).

At home, Ming is a good son to pay respect to our parents.    He took good care of my ill parents for the past years.    My father has colon cancer and has been in and out of hospital for years until last Jan when he passed away.    Ming has been with him most of the time in the hospital or in my parent's house.    My mother has Parkinson decease in wheel chair for years.    Every morning Ming visited at her bed.    She has the habit to see her eldest son to go easy that day.

Ming, as an immigrant, is also a hard-working person.    He bear-handedly builds his business.    I remember years ago when he runs his Shell gas station in Cambridge.    He endures sweat and tear in those days.    Today he is still a decent professional and businessman.

Ming is a responsible father and husband in his own family.    He works hard to provide food on the table.    Now his two daughters are both in college and are supported financially by Ming.

That is my brother I know.    I have no doubt in his integrity, honesty, professionalism, and friendly character.

Sincerely,
Beehwa Shiue

Robin Y. Ong
48 Forest Street
Lexington, MA 02421

January 16, 2008

To whom it may concern:

I have known Mr. Shih-Ming Shiue for ten years. He is honest, sincere and generous to his friends. He gets along with lots of friends. He works hard and has no bad habits.

He has a very predicable life style. During the week he works hard and, in the weekends, he plays golf and watch TV programs at home. He has a good family and he is very proud of them. I play a lot of golf with him and I enjoy his company as my golf partner.

In summary, I am pleased to know him as my close friend. I know that I can always count on him when I need helps.


Sincerely yours,

Robin Y. Ong

Jianzhong Liu
Beijing Zixin Automobile Fittings Co., Ltd.
Beijing, CHINA

January 17, 2008

To Whom It May Concern:

I am the General Manager of Beijing Zixin Automobile Fittings Co., Ltd, Mr.
JianZhong Liu.  My enterprise is located at China capital, Beijing, and we
manufacture auto brake drum products.  All of our products export to USA.  In the
beginning of 1994, I started to do business with Mr. Shih-Ming Shiue and till
today.  Through these 14 years, Shih-Ming Shiue is the US importer and I am
China's auto brake manufacturer, and we have maintained a very pleasant business
relationship.  Mr. Shih-Ming Shiue is a very honest and trustworthy businessman,
a devoted hard worker, and always follows the government regulations.

As I know Shih-Ming Shiue personally these many years, I can say he is person
who works honestly and loyally, and respects his elderly parents at home.  He is a
great mentor for me both at work and home.  I truly believe he is a great citizen in
the USA as well.

Sincerely,

Jian Zhong Liu

Mr. JianZhong Liu
General Manager
Beijing Zixin Automobile Fittings Co., Ltd.

Wei Ziyuan
Xianghe Xumingyuan Auto Parts Co Ltd.
Xianghe, CHINA

January 17, 2008

To Whom It May Concern:

I am Wei Ziyuan, the general manager of Xianghe Xumingyuan Auto Parts Co Ltd. I knew Shih-Ming Shiue, the former general manager of CAI, Inc. as early as May of 1992. We have known each other for 15 years. For business reasons, we contact each other each week during all these years. What I need to say is that only due to our mutual trust can we maintain such a long business relationship. Shih-Ming Shiue who is honest and decent is very credible in business. He sources large quantities of auto parts from my factory each year, and his payments are very timely. The business between us is fair and just. That's why our contact has been kept for as long as 15 years. I am very responsible to say that Shih-Ming Shiue is a good man.

Best regards,

Wei Ziyuan
Xianghe Xumingyuan Auto Parts Co Ltd.

Keith Jorgensen
32 Fernwood Dr.
Gardner, Ma. 01440

To Whom It May Concern,

I have known Shih-Ming Shiue for almost 10 years. I first met him while I was a buyer for a major retailer; I was purchasing products from his company. I found him to honest and straight forward in all of our dealings.

In fact I thought so much of him that when the opportunity arose I went to work for him. Over the years I have learned much from Ming both culturally and in business.

In my opinion Shih-Ming Shiue is a person of character, honesty and loyalty.

Sincerely,

Keith Jorgensen

Estella Tai – Controller/MBA
532 Main Street
Haverhill, MA 01830

January 14, 2008

To Whom It May Concern:

I am writing this letter as an employee of Shih-Ming Shiue (Ming).  I have been working with Ming indirectly and directly for a total of seven and a half years in his family business.  Throughout my fourteen years of career life, I have worked with many superiors and I would not hesitate to say that Ming does have the special characters that constitute a highly rated superior.

Ming is a very devoted hard worker and we named him the "workaholic" of our company.  He is a boss with strong business sense and vision.  He is persistent to our company's new business and product development, patient in dealing with business negotiations and passionate in what he does.  We are all aware of him owned a gas station/repair shop in the late 1980s and till today we can still feel his passion toward what he does in the automobile industry.

There are three main attributes that I can think of Ming as my superior.  First, through these years of working with Ming, I know for a fact that he is a superior with appreciation.  If he is aware of our dedication at work and our accomplishments to the company, he would not hesitate to initiate a raise, bonus or additional benefits under a profitable condition.  Second, he taught me to learn from my mistakes; if we admit that I had made a mistake in certain transaction, he would always say, "Don't worry, you learn something!"  He would not lose his temper over it, and he would always comfort and encourage me to go on.  Third, Ming had shown me his calmness in dealing with complicated and conflicted situations.  Through the years, we have had many difficult situations with customer, vendor or freight companies, he would always be calm to resolve these situations.

Ming has always been the heart of our company.  He brings in new businesses and products, maintains a true relationship and sets pricing with our customers and deals with vendors in cost, production and quality issues.  Our company cannot have a day without his in-depth involvement.

Sincerely,

Estella Tai
Controller/MBA

Agnes Han, M. Ed.
116 Cherrywood Dr.
Nashua, NH 03062

January 14, 2008

To Whom It May Concern,

I have learned Shih-Ming Shiue since June 2004, as the employee of his family owned company. Without any business background or related education, and even with to some degrees bias against businessmen, I found myself gradually devoted into business world by learning Ming's vision, attitude, and principles toward the business. Ming does not only straighten my bias against businessmen and also open a new window of my career life.

As I assist Ming quote prices with potential customers, he is very selective and high margin is not the first priority in his mind. He always assesses the surrounding business relationship and balances out the best deal for each party. He either declines unethical opportunities or rather sacrifices his company's margin for better cooperation among business parties. Ming always says that, as the Chinese saying, 'If you try to eat everything, you eat nothing". As I consult Ming for mistake I made or I found that our company may take advantage from it, Ming always gives me clear and strong instruction:" Do whatever is the right way!" Working for Ming changes my perspective on the business world.

Besides individual influence, Ming's leadership and his sense of humor make our working environment effective and pleasant. Ming is a gifted leader who always can quickly clarify the issues, gather opinions, make decisions, and support the actions. As to the details, he shows his respects to our operational department. Working for Ming confirms my career life is led to the right direction in the right way.

I sincerely consider that I am fortunate enough to work for Ming in these years. If life is such a learning journey, Ming definitely is one of my respectful teachers.

Sincerely,

Agnes Han, M. Ed.

| Doc. # | Entry # | Entry Date | TEV | AD Duty Rate | Antidumping Duty Due | Notes |
|---|---|---|---|---|---|---|
| 233 | J12 0022677-4 | 1/3/1997 | $32,314 | 0% | $0.00 | |
| 225 | 274-0082431-7 | 2/7/1997 | $180,959 | 0% | $0.00 | |
| 191 | AL8 4002804-6 | 2/24/1997 | $52,865 | 0% | $0.00 | |
| 198 | J12 0022835-0 | 2/24/1997 | $69,982 | 0% | $0.00 | |
| 210 | J12 0022831-7 | 2/24/1997 | $16,177 | 0% | $0.00 | |
| 183 | 274-0082759-1 | 3/1/1997 | $66,557 | 0% | $0.00 | |
| 220 | J12 0022692-3 | 3/9/1997 | $13,142 | 0% | $0.00 | |
| 174 | 274-0083108-0 | 3/19/1997 | $50,207 | 0% | $0.00 | Incomplete file. Date is input date |
| 151 | J12 0023056-0 | 3/24/1997 | $34,431 | 0% | $0.00 | |
| 161 | J12 0023055-0 | 3/24/1997 | $66,013 | 0% | $0.00 | |
| 137 | J12 0023029-0 | 3/28/1997 | $14,443 | 0% | $0.00 | |
| 144 | AL8 4002824-8 | 3/28/1997 | $191,519 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. |
| 127 | J12 0023082-6 | 4/1/1997 | $16,277 | 0% | $0.00 | |
| 114 | H13 1029696-5 | 4/4/1997 | $96,070 | 0% | $0.00 | |
| 100 | J12 0023191-2 | 4/7/1997 | $46,282 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. |
| 88 | JLB 0023209-5 | 4/8/1997 | $43,352 | 0% | $0.00 | |
| 79 | AL8 4002933-7 | 4/19/1997 | $17,559 | 0% | $0.00 | |
| 58 | J12 0022388-9 | 4/21/1997 | $32,725 | 0% | $0.00 | |
| 68 | J12 0022262-4 | 4/21/1997 | $29,225 | 0% | $0.00 | |
| 35 | J12 0023348-1 | 4/28/1997 | $16,258 | 0% | $0.00 | |
| 47 | J12 0023295-4 | 4/28/1997 | $85,695 | 0% | $0.00 | |
| 28 | AL8 4002825-3 | 5/1/1997 | $35,381 | 0% | $0.00 | |
| 14 | AL8 4003013-7 | 5/2/1997 | $17,624 | 0% | $0.00 | |
| 21 | AL8 4003013-7 | 5/2/1997 | $19,883 | 0% | $0.00 | |
| 33 | J12 0023295-4 | 5/2/1997 | $71,324 | 0% | $0.00 | |
| 1 | J12 0023469-1 | 5/5/1997 | $49,220 | 0% | $0.00 | |
| 358 | AL8 4003073-1 | 5/10/1997 | $101,776 | 0% | $0.00 | |
| 372 | AL8 4003072-3 | 5/10/1997 | $48,288 | 0% | $0.00 | |
| 348 | 274-0084586-6 | 5/20/1997 | $19,940 | 0% | $0.00 | |
| 340 | 274-0084513-0 | 5/21/1997 | $54,913 | 0% | $0.00 | |
| 332 | 274-0084920-1 | 5/22/1997 | $34,924 | 0% | $0.00 | |
| 325 | AL8 4003151-5 | 5/24/1997 | $107,029 | 0% | $0.00 | |
| 315 | 274-0084972-2 | 6/3/1997 | $52,524 | 0% | $0.00 | |
| 304 | AL8 4003238-0 | 6/9/1997 | | 0% | $0.00 | Incomplete file. |
| 283 | 274-0085711-6 | 6/12/1997 | $16,105 | 0% | $0.00 | |
| 290 | 274-0085116-1 | 6/12/1997 | $48,080 | 0% | $0.00 | |
| 260 | 274-0085207-7 | 6/16/1997 | $137,007 | 0% | $0.00 | |
| 252 | 274-0085609-6 | 6/21/1997 | $50,347 | 0% | $0.00 | |
| 244 | 274-0085392-8 | 6/22/1997 | $18,135 | 0% | $0.00 | |
| 541 | AL8 4003408-9 | 6/23/1997 | $55,103 | 0% | $0.00 | |
| 501 | 274-0085910-7 | 6/25/1997 | $49,548 | 0% | $0.00 | |
| 509 | 274-0085460-3 | 6/25/1997 | $36,144 | 0% | $0.00 | |
| 517 | J12 0023821-7 | 6/25/1997 | $31,171 | 0% | $0.00 | |
| 465 | 274-0086084-0 | 7/3/1997 | $116,162 | 0% | $0.00 | |
| 477 | 274-0085715-0 | 7/10/1997 | $102,696 | 0% | $0.00 | |
| 483 | 274-0085707-7 | 7/10/1997 | $137,007 | 0% | $0.00 | |
| 489 | 274-0085716-8 | 7/10/1997 | $129,955 | 0% | $0.00 | |
| 667 | J12 0024022-1 | 7/17/1997 | $17,157 | 0% | $0.00 | |
| 471 | 274-0085910-7 | 7/17/1997 | $34,507 | 0% | $0.00 | |
| 463 | AL8 4003573-0 | 7/19/1997 | $33,750 | 0% | $0.00 | |
| 451 | 274-0086064-0 | 7/24/1997 | $50,283 | 0% | $0.00 | |
| 457 | 274-0086095-6 | 7/24/1997 | $218,018 | 0% | $0.00 | |
| 444 | AL8 4003627-4 | 7/26/1997 | $34,861 | 0% | $0.00 | |
| 438 | 274-0086327-3 | 8/7/1997 | $107,015 | 0% | $0.00 | |
| 432 | 274-0086556-7 | 8/7/1997 | $34,427 | 0% | $0.00 | |
| 641 | 274-0086558-3 | 8/9/1997 | $18,924 | 0% | $0.00 | |
| 393 | J12 0024752-2 | 8/14/1997 | $103,706 | 0% | $0.00 | |
| 405 | 274-0086753-0 | 8/14/1997 | $36,729 | 0% | $0.00 | |
| 416 | J12 0024289-6 | 8/16/1997 | $68,520 | 0% | $0.00 | |
| 422 | J12 0024289-6 | 8/22/1997 | $52,872 | 0% | $0.00 | |
| 393 | 274-0086992-4 | 8/22/1997 | $166,301 | 0% | $0.00 | |
| 387 | 274-0086994-0 | 8/23/1997 | $55,447 | 0% | $0.00 | |
| 681 | 274-0086915-5 | 8/23/1997 | $51,312 | 0% | $0.00 | |
| 884 | J12 0024362-1 | 8/26/1997 | $17,602 | 0% | $0.00 | |
| 877 | 274-0087081-5 | 8/29/1997 | $109,626 | 0% | $0.00 | |
| 1112 | J12 0024483-5 | 9/4/1997 | $34,269 | 0% | $0.00 | |
| 871 | 274-0087254-7 | 9/5/1997 | $52,596 | 0% | $0.00 | |
| 966 | 274-0087373-6 | 9/8/1997 | $69,706 | 0% | $0.00 | |

| | A | B | C | D | E | F | G | H | J |
|---|---|---|---|---|---|---|---|---|---|
| 70 | 972 | 274-0087374-4 | 9/8/1997 | $38,010 | 0% | | $0.00 | | |
| 71 | 951 | 274-0087512-9 | 9/12/1997 | $37,371 | 0% | | $0.00 | | |
| 72 | 959 | 274-0087511-1 | 9/12/1997 | $138,282 | 0% | | $0.00 | | |
| 73 | 945 | 274-0087736-3 | 9/19/1997 | $89,869 | 0% | | $0.00 | | |
| 74 | 939 | AL3 4004176-1 | 9/24/1997 | $37,895 | 0% | | $0.00 | | |
| 75 | 910 | 274-0087753-9 | 9/25/1997 | $47,585 | 0% | | $0.00 | | |
| 76 | 927 | 274-0087754-7 | 9/25/1997 | $105,094 | 0% | | $0.00 | | |
| 77 | 920 | 274-0088012-9 | 9/29/1997 | $90,361 | 0% | | $0.00 | | |
| 78 | 933 | 274-0088011-1 | 9/29/1997 | $33,762 | 0% | | $0.00 | | |
| 79 | 1090 | AL8 4004256-1 | 10/4/1997 | $33,941 | 0% | | $0.00 | | |
| 80 | 1101 | AL8 4004255-3 | 10/4/1997 | $18,557 | 0% | | $0.00 | | |
| 81 | 1064 | 274-0088056-6 | 10/6/1997 | $74,314 | 0% | | $0.00 | | |
| 82 | 1084 | 274-0088101-0 | 10/6/1997 | $188,011 | 0% | | $0.00 | | |
| 83 | 1075 | 274-0088214-1 | 10/6/1997 | $103,938 | 0% | | $0.00 | | |
| 84 | 1055 | 274-0088437-8 | 10/14/1997 | $51,886 | 0% | | $0.00 | | |
| 85 | 1036 | 274-0088382-6 | 10/19/1997 | $17,234 | 0% | | $0.00 | | |
| 86 | 1046 | 274-0088438-6 | 10/19/1997 | $58,145 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. Have used import date since entry date not available | |
| 87 | 1019 | 274-0088964-1 | 10/23/1997 | $51,997 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 88 | 1028 | 274-0088890-2 | 10/26/1997 | $33,602 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 89 | 996 | AL8 4004705-7 | 11/15/1997 | $38,043 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 90 | 1011 | AL8 4004717-2 | 11/15/1997 | $16,044 | 0% | | $0.00 | | |
| 91 | 1001 | 274-0089212-4 | 11/16/1997 | $18,342 | 0% | | $0.00 | | |
| 92 | 990 | AL8 4004417-0 | 11/26/1997 | $52,234 | 0% | | $0.00 | | |
| 93 | 980 | 274-0089592-9 | 11/28/1997 | $89,651 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 94 | 379 | 274-0089735-4 | 12/3/1997 | $55,981 | 0% | | $0.00 | | |
| 95 | 861 | 274-0089716-4 | 12/5/1997 | $34,516 | 0% | | $0.00 | | |
| 96 | 5059 | 274-0090021-0 | 12/22/1997 | $37,591 | 0% | | $0.00 | | |
| 97 | 800 | 274-0090230-3 | 12/23/1997 | $520,481 | 0% | | $0.00 | | |
| 98 | 850 | 274-0090205-7 | 12/23/1997 | $16,365 | 0% | | $0.00 | | |
| 99 | 94 | 274-0090152-0 | 12/29/1997 | $16,801 | 0% | | $0.00 | | |
| 100 | 748 | 274-0090552-0 | 1/7/1998 | $48,142 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 101 | 696 | 274-0090906-4 | 1/9/1998 | $140,113 | 0% | | $0.00 | | |
| 102 | 593 | 274-0090082-9 | 1/11/1998 | $29,777 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 103 | 5028 | 274-0090424-6 | 1/16/1998 | $22,389 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 104 | 5070 | 274-0090810-5 | 1/16/1998 | $30,699 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 105 | 569 | 274-0090578-9 | 1/21/1998 | $159,597 | 0% | | $0.00 | Incomplete file. Date is create date, not entry date. | |
| 106 | 5088 | 274-0091030-6 | 1/26/1998 | $133,002 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 107 | 730 | 274-0090083-7 | 1/26/1998 | $103,206 | 0% | | $0.00 | | |
| 108 | 5108 | 274-0091026-6 | 1/28/1998 | $35,489 | 0% | | $0.00 | Incomplete file | |
| 109 | 5127 | 274-0910206-2 | 1/28/1998 | $112,226 | 0% | | $0.00 | Incomplete file | |
| 110 | 5137 | 274-0091072-6 | 1/29/1998 | $14,404 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 111 | 5157 | 274-0091031-4 | 1/29/1998 | $219,556 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 112 | 548 | 274-0090698 | 2/3/1998 | $113,077 | 0% | | $0.00 | Incomplete file. Date is input date, not entry date. | |
| 113 | 5224 | 274-0091184-1 | 2/5/1998 | $119,369 | 0% | | $0.00 | | |
| 114 | 5233 | 274-0091182-5 | 2/5/1998 | $32,679 | 0% | | $0.00 | | |
| 115 | 5249 | 605-08011222 | 2/6/1998 | $50,056 | 0% | | $0.00 | Incomplete file, and no NDC | |
| 116 | 5297 | 274-0091468-8 | 2/6/1998 | $15,663 | 0% | | $0.00 | Incomplete file | |
| 117 | 5329 | 274-0091483-7 | 2/17/1998 | $124,996 | 0% | | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. | To calculate the AD duties, TEV used. |
| 118 | 5353 | 274-0091492-8 | 2/17/1998 | $85,857 | 0% | | $0.00 | | |
| 119 | 5375 | 274-0091579-2 | 2/20/1998 | $66,606 | 0% | | $0.00 | | |
| 120 | 548 | 274-0092177-4 | 3/18/1998 | $38,416 | 0% | | $0.00 | | |
| 121 | 5440 | AL8 4005785-8 | 3/24/1998 | $14,891 | 0% | | $0.00 | | |
| 122 | 5446 | AL8 4005672-8 | 3/30/1998 | $14,189 | 0% | | $0.00 | | |
| 123 | 17841 | AL8 4006012-6 | 4/17/1998 | $6,847 | 0% | | $0.00 | | |
| 124 | 5508 | 274-0093104-7 | 4/23/1998 | $43,325 | 0% | | $0.00 | | |
| 125 | 5537 | 274-0093125-2 | 4/30/1998 | $17,433 | 0% | | $0.00 | | |
| 126 | 5581 | 274-0093281-3 | 4/30/1998 | $78,954 | 0% | | $0.00 | | |
| 127 | 5652 | 274-0093290-4 | 5/1/1998 | $102,893 | 0% | | $0.00 | | |
| 128 | 5737 | AL8 4006138-9 | 5/2/1998 | $18,692 | 0% | | $0.00 | | |
| 129 | 5771 | 274-0093282-1 | 5/7/1998 | $110,253 | 0% | | $0.00 | | |
| 130 | 5906 | 274-0093341-5 | 5/7/1998 | $52,838 | 0% | | $0.00 | | |
| 131 | 5991 | 274-0093284-7 | 5/7/1998 | $86,155 | 0% | | $0.00 | | |
| 132 | 5870 | AL8 4005173-6 | 5/8/1998 | $17,872 | 0% | | $0.00 | | |
| 133 | 6076 | 274-0093569-1 | 5/15/1998 | $109,556 | 0% | | $0.00 | | |
| 134 | 8482 | 274-0093620-2 | 5/18/1998 | $37,589 | 0% | | $0.00 | Incomplete file. TEV is invoice amount. No customs forms. | |
| 135 | 6172 | 274-0093620-2 | 5/20/1998 | $37,238 | 0% | | $0.00 | | |
| 136 | 6239 | 274-0093619-4 | 5/20/1998 | $138,849 | 0% | | $0.00 | | |
| 137 | 6330 | 274-0093723-4 | 5/20/1998 | $101,383 | 0% | | $0.00 | | |
| 138 | 8480 | 274-0093723-4 | 5/23/1998 | | | | $0.00 | Incomplete file. Date is bill of lading date. | |

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 139 | 6449 | 274-0093816-6 | 5/27/1998 | $36,380 | 0% | $0.00 | |
| 140 | 6537 | 274-0093722-6 | 5/29/1998 | $357,713 | 0% | $0.00 | |
| 141 | 6772 | 274-0093946-1 | 6/3/1998 | $94,479 | 0% | $0.00 | |
| 142 | 6873 | 274-0094025-3 | 6/3/1998 | $30,124 | 0% | $0.00 | |
| 143 | 6965 | 274-0093947-9 | 6/4/1998 | $195,604 | 0% | $0.00 | |
| 144 | 7108 | ALB-4006490-4 | 6/4/1998 | $34,747 | 0% | $0.00 | |
| 145 | 7121 | ALB-4006493-8 | 6/5/1998 | $50,846 | 0% | $0.00 | |
| 146 | 7150 | 274-0094190-5 | 6/9/1998 | $20,468 | 0% | $0.00 | |
| 147 | 7220 | 274-0094168-1 | 6/9/1998 | $147,690 | 0% | $0.00 | |
| 148 | 7349 | ALB-4006494-6 | 6/10/1998 | $18,066 | 0% | $0.00 | |
| 149 | 7371 | 274-0094240-8 | 6/10/1998 | $196,129 | 0% | $0.00 | |
| 150 | 7396 | ALB-4006495-3 | 6/10/1998 | $17,233 | 0% | $0.00 | |
| 151 | 7616 | 274-0094450-3 | 6/19/1998 | $50,446 | 0% | $0.00 | |
| 152 | 7586 | 274-0094545-0 | 6/19/1998 | $237,612 | 0% | $0.00 | |
| 153 | 7867 | 274-0094671-4 | 6/22/1998 | $71,798 | 0% | $0.00 | |
| 154 | 7978 | 274-0094911-4 | 6/29/1998 | $130,124 | 0% | $0.00 | |
| 155 | 8079 | 274-0094956-9 | 6/30/1998 | $136,898 | 0% | $0.00 | |
| 156 | 8197 | 274-0094944-5 | 7/1/1998 | $78,503 | 0% | $0.00 | |
| 157 | 8288 | ALB-4006782-4 | 7/2/1998 | $75,085 | 0% | $0.00 | |
| 158 | 8371 | ALB-4006768-3 | 7/1/1998 | $134,977 | 0% | $0.00 | |
| 159 | 8465 | 274-0094944-5 | 7/1/1998 | $37,589 | 0% | $0.00 | |
| 160 | 8534 | ALB-4006702-4 | 7/2/1998 | $39,224 | 0% | $0.00 | |
| 161 | 8590 | 274-0094997-3 | 7/3/1998 | $18,249 | 0% | $0.00 | |
| 162 | 8647 | 274-0094989-9 | 7/7/1998 | $51,543 | 0% | $0.00 | |
| 163 | 8725 | 274-0095010-4 | 7/7/1998 | $67,027 | 0% | $0.00 | |
| 164 | 8795 | 274-0095020-5 | 7/9/1998 | $38,906 | 0% | $0.00 | |
| 165 | 8853 | 274-0095407-2 | 7/15/1998 | $66,394 | 0% | $0.00 | |
| 166 | 9092 | 274-0095456-9 | 7/16/1998 | $61,463 | 0% | $0.00 | |
| 167 | 9173 | ALB-4006927-5 | 7/16/1998 | $91,576 | 0% | $0.00 | |
| 168 | 9233 | 274-0095461-9 | 7/20/1998 | $18,696 | 0% | $0.00 | Incomplete file. Date and TEV from invoice. No customs documents. |
| 169 | 8938 | 274-0095737-2 | 7/24/1998 | $156,654 | 0% | $0.00 | |
| 170 | 9034 | 274-0095746-3 | 7/24/1998 | $67,931 | 0% | $0.00 | |
| 171 | 9272 | 274-0095867-7 | 7/28/1998 | $221,747 | 0% | $0.00 | |
| 172 | 9385 | 274-0095869-3 | 7/29/1998 | $155,862 | 0% | $0.00 | |
| 173 | 9522 | 274-0096034-3 | 8/3/1998 | $16,528 | 0% | $0.00 | |
| 174 | 9756 | 274-0095873-5 | 8/4/1998 | $96,329 | 0% | $0.00 | |
| 175 | 9671 | 605-0602206-0 | 8/5/1998 | $18,135 | 0% | $0.00 | |
| 176 | 9474 | 274-0096032-7 | 8/10/1998 | $33,804 | 0% | $0.00 | |
| 177 | 9681 | 274-0096033-5 | 8/10/1998 | $97,973 | 0% | $0.00 | |
| 178 | 9906 | 274-0096074-5 | 8/11/1998 | $52,834 | 0% | $0.00 | |
| 179 | 11745 | ALB-4007184-2 | 8/11/1998 | $69,892 | 0% | $0.00 | |
| 180 | 11677 | 274-0096269-5 | 8/18/1998 | $71,912 | 0% | $0.00 | |
| 181 | 11530 | 274-0096510-2 | 8/19/1998 | $67,931 | 0% | $0.00 | |
| 182 | 11602 | 274-0096511-0 | 8/19/1998 | $70,773 | 0% | $0.00 | |
| 183 | 11426 | ALB-4007572-8 | 8/25/1998 | $15,941 | 0% | $0.00 | |
| 184 | 11438 | 274-0096509-4 | 8/25/1998 | $19,365 | 0% | $0.00 | |
| 185 | 12039 | 274-0096512-8 | 8/27/1998 | $83,647 | 0% | $0.00 | |
| 186 | 12027 | ALB-4007365-7 | 9/3/1998 | $59,553 | 0% | $0.00 | |
| 187 | 11862 | 274-0096872-4 | 9/3/1998 | $16,212 | 0% | $0.00 | |
| 188 | 11930 | 274-0096874-2 | 9/3/1998 | $17,056 | 0% | $0.00 | |
| 189 | 11979 | 274-0096098-5 | 9/8/1998 | $46,204 | 0% | $0.00 | |
| 190 | 11803 | 274-0096005-4 | 9/14/1998 | $18,415 | 0% | $0.00 | |
| 191 | 11756 | 274-0097031-8 | 9/15/1998 | $57,518 | 0% | $0.00 | |
| 192 | 11426 | ALB-4007572-8 | 9/20/1998 | $25,389 | 0% | $0.00 | |
| 193 | 11277 | 274-0097061-2 | 9/29/1998 | $35,926 | 0% | $0.00 | |
| 194 | 11376 | 274-0097062-0 | 10/4/1998 | $17,774 | 0% | $0.00 | |
| 195 | 11270 | EH3-0816650-1 | 10/4/1998 | $35,711 | 0% | $0.00 | |
| 196 | 13245 | 274-0097348-3 | 10/13/1998 | $121,805 | 0% | $0.00 | |
| 197 | 13162 | 274-0098081-9 | 11/2/1998 | $38,088 | 0% | $0.00 | |
| 198 | 13283 | EH3-0817132-9 | 11/18/1998 | $18,498 | 0% | $0.00 | |
| 199 | 11260 | EH3-0817004-0 | 11/4/1998 | $18,255 | 0% | $0.00 | |
| 200 | 11284 | ALB-4008059-1 | 12/10/1998 | $18,955 | 0% | $0.00 | |
| 201 | 12227 | 004-7867364-1 | 12/17/1998 | $54,269 | 0% | $0.00 | |
| 202 | 12163 | 274-0099001-0 | 12/17/1998 | $78,090 | 0% | $0.00 | |
| 203 | 12889 | 274-0099912-7 | 11/8/1998 | $68,455 | 0% | $0.00 | |
| 204 | 13322 | 274-0099891-6 | 12/17/1998 | $33,527 | 0% | $0.00 | |
| 205 | 13204 | 004-7869338-0 | 12/23/1998 | $13,596 | 0% | $0.00 | |
| 206 | 12819 | 274-0100517-1 | 12/30/1998 | $35,385 | 0% | $0.00 | |

DC: 2420398-1

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 208 | 11118 | ALB-4009057-8 | 1/7/1999 | $74,585 | 0% | | $0.00 | |
| 209 | 11023 | 274-0100699-7 | 1/8/1999 | $93,605 | 0% | | $0.00 | |
| 210 | 12089 | ALB-4009222-8 | 1/17/1999 | $78,765 | 0% | | $0.00 | |
| 211 | 12462 | 274-0100569-3 | 1/18/1999 | $54,181 | 0% | | $0.00 | |
| 212 | 12529 | 274-0101019-7 | 1/19/1999 | $54,600 | 0% | | $0.00 | |
| 213 | 12569 | 274-0101022-1 | 1/19/1999 | $15,932 | 0% | | $0.00 | |
| 214 | 10942 | 274-0101020-5 | 1/19/1999 | $32,286 | 0% | | $0.00 | |
| 215 | 12716 | 004-7885029-4 | 1/19/1999 | $91,632 | 0% | | $0.00 | |
| 216 | 10404 | 274-0101021-3 | 1/25/1999 | $70,060 | 0% | | $0.00 | |
| 217 | 10843 | 004-7892286-2 | 1/31/1999 | $32,506 | 0% | | $0.00 | |
| 218 | 12307 | 274-0101351-3 | 2/3/1999 | $96,860 | 0% | | $0.00 | |
| 219 | 12373 | 274-0101382-1 | 2/3/1999 | $65,726 | 0% | | $0.00 | |
| 220 | 13529 | 274-0101304-3 | 2/3/1999 | $162,413 | 0% | | $0.00 | |
| 221 | 10763 | 274-0101413-2 | 2/8/1999 | $85,534 | 0% | | $0.00 | |
| 222 | 13845 | 274-0100534-3 | 2/9/1999 | $88,840 | 0% | | $0.00 | |
| 223 | 10707 | 274-0101441-3 | 2/12/1999 | $34,643 | 0% | | $0.00 | |
| 224 | 10333 | 274-0101278-9 | 2/12/1999 | $66,810 | 0% | | $0.00 | |
| 225 | 13615 | 274-0101649-1 | 2/17/1999 | $17,913 | 0% | | $0.00 | |
| 226 | 10647 | ALB-4009678-1 | 2/24/1999 | $17,623 | 0% | | $0.00 | |
| 227 | 13709 | 274-0102004-8 | 2/24/1999 | $53,680 | 0% | | $0.00 | |
| 228 | 13766 | 274-0101981-8 | 3/1/1999 | $60,661 | 0% | | $0.00 | |
| 229 | 10946 | 274-0103195-3 | 3/16/1999 | $190,225 | 0% | | $0.00 | |
| 230 | 10071 | 274-0102378-6 | 3/16/1999 | $126,304 | 0% | | $0.00 | |
| 231 | 10601 | 274-0102178-0 | 3/9/1999 | $115,626 | 0% | | $0.00 | |
| 232 | 13884 | 274-0102547-4 | 3/16/1999 | $71,841 | 0% | | $0.00 | |
| 233 | 9829 | 274-0102319-0 | 3/16/1999 | $86,477 | 0% | | $0.00 | |
| 234 | 10071 | 274-0102378-6 | 3/17/1999 | $38,396 | 0% | | $0.00 | |
| 235 | 14056 | 274-0102648-2 | 3/17/1999 | $35,386 | 0% | | $0.00 | |
| 236 | 12308 | 274-0103107-9 | 4/1/1999 | $90,473 | 0% | | $0.00 | |
| 237 | 10110 | 274-0103842-0 | 5/4/1999 | $53,844 | 0% | | $0.00 | |
| 238 | 10472 | ALB-4010440-3 | 5/6/1999 | $15,737 | 0% | | $0.00 | |
| 239 | 10167 | 004-7982208-6 | 5/8/1999 | $21,833 | 0% | | $0.00 | Incomplete file. Date is import date. |
| 240 | 12141 | 004-7982024-2 | 5/9/1999 | $58,320 | 0% | | $0.00 | |
| 241 | 10263 | 274-0104120-0 | 5/11/1999 | $66,470 | 0% | | $0.00 | |
| 242 | 9931 | 274-0104350-3 | 5/17/1999 | $91,761 | 0% | | $0.00 | |
| 243 | 10000 | 274-0104841-0 | 5/17/1999 | $98,304 | 0% | | $0.00 | |
| 244 | 14135 | D02-0148841-1 | 5/18/1999 | $58,442 | 0% | | $0.00 | |
| 245 | 14540 | D02-0148843-7 | 5/18/1999 | $18,263 | 0% | | $0.00 | |
| 246 | 16560 | D02-0148931-0 | 5/20/1999 | $18,728 | 0% | | $0.00 | |
| 247 | 14300 | 274-0104382-6 | 5/25/1999 | $38,161 | 0% | | $0.00 | |
| 248 | 14300 | 004-7969787-2 | 5/25/1999 | $52,608 | 0% | | $0.00 | |
| 249 | 16637 | 004-7969792-2 | 5/25/1999 | $67,858 | 0% | | $0.00 | |
| 250 | 14188 | 274-0104708-2 | 5/26/1999 | $102,483 | 0% | | $0.00 | |
| 251 | 14396 | 274-0104705-8 | 5/26/1999 | $55,789 | 0% | | $0.00 | |
| 252 | 10283 | 274-0104720-0 | 5/26/1999 | $17,672 | 0% | | $0.00 | |
| 253 | 14481 | 274-0104706-6 | 5/26/1999 | $47,461 | 0% | | $0.00 | |
| 254 | 16716 | 274-0105072-2 | 6/7/1999 | $77,389 | 0% | | $0.00 | |
| 255 | 16368 | 274-0105220-7 | 6/9/1999 | $53,888 | 0% | | $0.00 | |
| 256 | 14824 | 274-0105225-6 | 6/9/1999 | $98,909 | 0% | | $0.00 | |
| 257 | 16819 | 274-0105813-9 | 6/25/1999 | $90,918 | 0% | | $0.00 | |
| 258 | 16132 | 004-7997103-0 | 7/7/1999 | $104,816 | 0% | | $0.00 | |
| 259 | 16267 | 274-0105999-6 | 7/1/1999 | $32,195 | 0% | | $0.00 | |
| 260 | 16321 | 274-0106013-5 | 7/1/1999 | $88,198 | 0% | | $0.00 | |
| 261 | 16430 | 274-0106000-2 | 7/1/1999 | $84,455 | 0% | | $0.00 | |
| 262 | 16488 | 274-0105986-2 | 7/1/1999 | $79,261 | 0% | | $0.00 | |
| 263 | 14578 | 004-7997102-0 | 7/2/1999 | $67,535 | 0% | | $0.00 | |
| 264 | 16285 | 004-7996688-4 | 7/7/1999 | $66,268 | 0% | | $0.00 | |
| 265 | 15933 | 274-0106559-7 | 7/9/1999 | $121,182 | 0% | | $0.00 | |
| 266 | 16207 | 274-0106660-5 | 7/9/1999 | $81,434 | 0% | | $0.00 | |
| 267 | 16207 | 004-8006483-0 | 7/13/1999 | $70,480 | 0% | | $0.00 | |
| 268 | 15846 | 004-8009485-3 | 7/21/1999 | $14,413 | 0% | | $0.00 | |
| 269 | 15746 | 274-0107138-9 | 7/29/1999 | $81,692 | 0% | | $0.00 | Files 15688 and 15767 contained identical documents |
| 270 | 15551 | 274-0107138-9 | 7/29/1999 | $119,962 | 0% | | $0.00 | Files 15688 and 15767 contained identical documents |
| 271 | 15688 | 274-0107137-1 | 7/29/1999 | $119,962 | 0% | | $0.00 | |
| 272 | 15767 | 274-0107137-1 | 7/29/1999 | $119,962 | 0% | | $0.00 | |
| 273 | 15725 | 274-0107138-7 | 7/20/1999 | $53,625 | 0% | | $0.00 | |
| 274 | 16909 | 004-8014657-5 | 7/31/1999 | $50,134 | 0% | | $0.00 | |
| 275 | 17726 | 004-8004597-0 | 8/3/1999 | $51,776 | 0% | | $0.00 | Incomplete file. Date is arrival date. |

DC: 2420398-1

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 277 | 15543 | 274-0107301-3 | 8/5/1999 | $24,617 | 0% | $0.00 | | | | | | | |
| 278 | 17106 | 274-0107605-7 | 8/11/1999 | $59,776 | 0% | $0.00 | | | | | | | |
| 279 | 17004 | 274-0107619-8 | 8/12/1999 | $70,312 | 0% | $0.00 | | | | | | | |
| 280 | 15357 | 274-0107826-4 | 8/16/1999 | $55,682 | 0% | $0.00 | | | | | | | |
| 281 | 17875 | 274-0107875-0 | 8/16/1999 | $73,838 | 0% | $0.00 | | | | | | | |
| 282 | 15366 | 274-0107617-2 | 8/17/1999 | $32,827 | 0% | $0.00 | | | | | | | |
| 283 | 15375 | 274-0107833-5 | 8/19/1999 | $41,027 | 0% | $0.00 | | | | | | | |
| 284 | 15394 | 274-0107892-1 | 8/19/1999 | $65,625 | 0% | $0.00 | | | | | | | |
| 285 | 17316 | 274-0107875-6 | 8/19/1999 | $80,842 | 0% | $0.00 | | | | | | | |
| 286 | 17199 | 004-8011717-9 | 6/22/1999 | $59,701 | 0% | $0.00 | | | | | | | |
| 287 | 15384 | 274-0108163-6 | 8/29/1999 | $65,624 | 0% | $0.00 | | | | | | | |
| 288 | 15402 | 274-0107929-1 | 8/29/1999 | $41,026 | 0% | $0.00 | | | | | | | |
| 289 | 17414 | 274-0108162-8 | 8/29/1999 | $56,022 | 0% | $0.00 | | | | | | | |
| 290 | 15414 | D02-0152056-9 | 8/30/1999 | $23,989 | 0% | $0.00 | | | | | | | |
| 291 | 15424 | 274-0107945-7 | 9/3/1999 | $30,608 | 0% | $0.00 | | | | | | | |
| 292 | 15449 | 274-0108307-9 | 9/3/1999 | $57,441 | 0% | $0.00 | | | | | | | |
| 293 | 15458 | 274-0108258-4 | 9/5/1999 | $8,205 | 0% | $0.00 | | | | | | | |
| 294 | 15432 | 274-0108365-7 | 9/6/1999 | $57,393 | 0% | $0.00 | | | | | | | |
| 295 | 15442 | 274-0108363-2 | 9/6/1999 | $57,393 | 0% | $0.00 | | | | | | | |
| 296 | 15466 | D02-0152290-4 | 9/6/1999 | $63,944 | 0% | $0.00 | | | | | | | |
| 297 | 17498 | 274-0108260-0 | 9/6/1999 | $32,128 | 0% | $0.00 | | | | | | | |
| 298 | 15478 | 274-0108364-0 | 9/8/1999 | $16,418 | 0% | $0.00 | | | | | | | |
| 299 | 15488 | D02-0152629-3 | 9/13/1999 | $32,346 | 0% | $0.00 | | | | | | | |
| 300 | 15498 | 274-0108629-6 | 9/15/1999 | $65,649 | 0% | $0.00 | | | | | | | |
| 301 | 15507 | 274-0108630-4 | 9/15/1999 | $61,722 | 0% | $0.00 | | | | | | | |
| 302 | 15516 | 274-0108628-8 | 9/20/1999 | $24,615 | 0% | $0.00 | | | | | | | |
| 303 | 14698 | 274-0108698-5 | 9/22/1999 | $38,978 | 0% | $0.00 | | | | | | | |
| 304 | 15522 | 274-0108895-1 | 9/22/1999 | $90,243 | 0% | $0.00 | | | | | | | |
| 305 | 15532 | 274-0108896-9 | 9/22/1999 | $50,153 | 0% | $0.00 | | | | | | | |
| 306 | 14707 | 274-0109059-5 | 9/24/1999 | $73,855 | 0% | $0.00 | | | | | | | |
| 307 | 14718 | 274-0109058-7 | 9/24/1999 | $32,819 | 0% | $0.00 | | | | | | | |
| 308 | 14725 | 274-0108899-3 | 9/27/1999 | $10,261 | 0% | $0.00 | | | | | | | |
| 309 | 14734 | D02-0153212-0 | 9/27/1999 | $17,534 | 0% | $0.00 | | | | | | | |
| 310 | 14742 | 274-0090084-6 | 9/30/1999 | $65,622 | 0% | $0.00 | | | | | | | |
| 311 | 14750 | 274-0108897-7 | 10/5/1999 | $16,368 | 0% | $0.00 | | | | | | | |
| 312 | 17623 | D02-0153546-8 | 10/5/1999 | $30,204 | 0% | $0.00 | | | | | | | |
| 313 | 14759 | 274-0100469-6 | 10/8/1999 | $90,476 | 0% | $0.00 | | | | | | | |
| 314 | 14779 | 274-0100468-8 | 10/8/1999 | $77,293 | 0% | $0.00 | | | | | | | |
| 315 | 17559 | D02-0155583-1 | 10/11/1999 | $12,360 | 0% | $0.00 | | | | | | | |
| 316 | 17654 | D02-0155384-9 | 10/11/1999 | $60,090 | 0% | $0.00 | | | | | | | |
| 317 | 14768 | D02-0100612-1 | 10/12/1999 | $82,067 | 0% | $0.00 | | | | | | | |
| 318 | 14787 | 274-0100965-1 | 10/12/1999 | $98,584 | 0% | $0.00 | | | | | | | |
| 319 | 14798 | 274-0100980-4 | 10/28/1999 | $32,880 | 43.32% | $13,983.26 | | | | | | | |
| 320 | 1176 | E94-0940633-3 | 11/16/1999 | $52,279 | 43.32% | $22,651.17 | | | | | | | |
| 321 | 14807 | E94-0940277-9 | 11/17/1999 | $57,446 | 43.32% | $24,878.68 | | | | | | | |
| 322 | 14835 | E94-0940276-7 | 11/23/1999 | $57,430 | 43.32% | $24,878.68 | | | | | | | |
| 323 | 14948 | 323-0999207-2 | 11/24/1999 | $13,603 | 43.32% | $5,892.82 | | | | | | | |
| 324 | 14208 | E94-0940777-8 | 11/25/1999 | $18,471 | 43.32% | $8,001.64 | | | | | | | |
| 325 | 14865 | E94-0940635-8 | 11/30/1999 | $51,125 | 43.32% | $22,147.36 | | | | | | | |
| 326 | 14874 | 323-0999175-3 | 11/30/1999 | $14,389 | 43.32% | $6,233.31 | | | | | | | |
| 327 | 1236 | E94-0941131-7 | 12/1/1999 | $48,818 | 43.32% | $21,147.96 | | | | | | | |
| 328 | 14220 | E94-0941130-9 | 12/2/1999 | $58,670 | 43.32% | $25,416.14 | | | | | | | |
| 329 | 1160 | E94-0940632-5 | 12/8/1999 | $18,846 | 43.32% | $8,164.09 | | | | | | | |
| 330 | 15005 | E94-0941132-5 | 12/13/1999 | $16,323 | 43.32% | $7,071.12 | | | | | | | |
| 331 | 1191 | E94-0940779-4 | 12/14/1999 | $33,680 | 43.32% | $14,590.18 | | | | | | | |
| 332 | 14787 | 323-0999844-8 | 12/15/1999 | $27,707 | 43.32% | $12,002.67 | | | | | | | |
| 333 | 15011 | E94-0941083-0 | 12/15/1999 | $73,944 | 43.32% | $32,032.54 | | | | | | | |
| 334 | 15130 | E94-0940778-6 | 12/15/1999 | $8,203 | 43.32% | $3,553.54 | | | | | | | |
| 335 | 15137 | 323-9910574-4 | 12/22/1999 | $32,100 | 43.32% | $13,905.72 | | | | | | | |
| 336 | 15424 | 323-9910573-6 | 12/28/1999 | $27,586 | 43.32% | $11,952.26 | | | | | | | |
| 337 | 15308 | E94-0941671-2 | 12/28/1999 | $49,358 | 43.32% | $21,381.89 | | | | | | | |
| 338 | 15315 | E94-0941672-0 | 12/28/1999 | $115,627 | 43.32% | $50,089.62 | | | | | | | |
| 339 | 1254 | E94-0941673-8 | 1/10/2000 | $176,871 | 43.32% | $76,620.52 | | | | | | | |
| 340 | 15235 | E94-0940932-5 | 1/10/2000 | $41,173 | 43.32% | $17,836.14 | | | | | | | |
| 341 | 18044 | E94-0941893-2 | 1/12/2000 | $98,432 | 43.32% | $42,640.74 | | | | | | | |
| 342 | 18155 | WD2-0708822-9 | 1/17/2000 | $15,910 | 43.32% | $6,892.21 | | | | | | | |
| 343 | 15235 | E94-0941094-8 | 1/20/2000 | $15,336 | 43.32% | $6,643.56 | | | | | | | |
| 344 | 18242 | E94-0942165-4 | 1/20/2000 | $8,199 | 43.32% | $3,551.81 | | | | | | | |
| 345 | 18265 | E94-0942187-8 | 1/20/2000 | $98,575 | 43.32% | $42,702.69 | | | | | | | |

DC 2420398-1

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 346 | 18185 | WDZ-0708875-7 | 1/24/2000 | 1/24/2000 | $7,892 | 43.32% | $3,418.81 | |
| 347 | 1300 | E94-0942188-6 | 1/27/2000 | 1/27/2000 | $96,105 | 43.32% | $41,632.69 | |
| 348 | 18212 | WDZ-0708960-7 | 1/31/2000 | 1/31/2000 | $31,983 | 43.32% | $13,855.04 | |
| 349 | 18308 | E94-0942390-8 | 1/31/2000 | 1/31/2000 | $163,444 | 43.32% | $70,803.27 | |
| 350 | 18092 | E94-0942477-3 | 2/3/2000 | 2/3/2000 | $82,293 | 43.32% | $35,649.33 | |
| 351 | 17997 | E94-0942760-2 | 2/15/2000 | 2/15/2000 | $57,441 | 43.32% | $24,883.44 | |
| 352 | 17343 | WDZ-0709143-9 | 2/16/2000 | 2/16/2000 | $14,161 | 43.32% | $6,134.51 | |
| 353 | 17971 | WDZ-0709142-1 | 2/16/2000 | 2/16/2000 | $7,035 | 43.32% | $3,047.56 | |
| 354 | 18403 | E94-0943110-9 | 2/28/2000 | 2/28/2000 | $57,605 | 43.32% | $24,954.49 | |
| 355 | 17898 | E94-0943163-3 | 3/1/2000 | 3/1/2000 | $66,008 | 43.32% | $28,594.67 | |
| 356 | 18487 | E94-0943111-7 | 3/2/2000 | 3/2/2000 | $7,904 | 43.32% | $3,424.01 | |
| 357 | 18514 | E94-0943109-1 | 3/7/2000 | 3/7/2000 | $65,648 | 43.32% | $28,438.71 | |
| 358 | 15340 | E94-0943678-5 | 3/27/2000 | 3/27/2000 | $81,550 | 43.32% | $35,327.46 | |
| 359 | 18449 | E94-0943679-3 | 3/27/2000 | 3/27/2000 | $49,213 | 43.32% | $21,319.07 | |
| 360 | 2765 | 323-2004080-6 | 5/2/2000 | 5/2/2000 | $15,994 | 43.32% | $6,928.60 | |
| 361 | 1325 | 323-2004082-0 | 5/8/2000 | 5/8/2000 | $34,104 | 43.32% | $14,773.85 | |
| 362 | 2516 | EN5-0014489-9 | 5/8/2000 | 5/8/2000 | $213,622 | 43.32% | $92,541.05 | |
| 363 | 1403 | D02-0162613-1 | 6/29/2000 | 6/29/2000 | $36,833 | 43.32% | $15,956.12 | |
| 364 | 1462 | D02-0163056-3 | 7/10/2000 | 7/10/2000 | $17,273 | 43.32% | $7,482.66 | |
| 365 | 1512 | D02-0163990-6 | 7/18/2000 | 7/18/2000 | $17,100 | 43.32% | $7,407.72 | |
| 366 | 1562 | D02-0163997-1 | 7/27/2000 | 7/27/2000 | $63,498 | 43.32% | $27,503.00 | |
| 367 | 1444 | D02-0164406-2 | 7/31/2000 | 7/31/2000 | $17,678 | 43.32% | $7,657.11 | |
| 368 | 1683 | D02-0165540-7 | 8/28/2000 | 8/28/2000 | $64,985 | 43.32% | $28,151.50 | |
| 369 | 1776 | D02-0165567-0 | 9/4/2000 | 9/4/2000 | $48,849 | 43.32% | $21,161.39 | |
| 370 | 4805 | DO2-0165851-8 | 9/5/2000 | 9/5/2000 | $88,813 | 43.32% | $38,473.79 | |
| 371 | 1381 | DO2-0165855-2 | 9/5/2000 | 9/5/2000 | $150,052 | 43.32% | $64,999.03 | |
| 372 | 3482 | EN5-0015769-2 | 9/21/2000 | 9/21/2000 | $149,994 | 43.32% | $64,977.40 | |
| 373 | 3461 | DO2-0166905-1 | 10/1/2000 | 10/1/2000 | $14,803 | 43.32% | $6,412.66 | |
| 374 | 3445 | DO2-0166905-1 | 10/3/2000 | 10/3/2000 | $120,030 | 43.32% | $51,996.13 | |
| 375 | 3272 | EN5-0016005-0 | 10/3/2000 | 10/3/2000 | $120,028 | 43.32% | $51,997.00 | |
| 376 | 3852 | EN5-0016006-8 | 10/30/2000 | 10/30/2000 | $164,953 | 43.32% | $71,457.64 | |
| 377 | 3313 | DO2-0168105-6 | 11/6/2000 | 11/6/2000 | $48,646 | 43.32% | $21,073.65 | |
| 378 | 3222 | EN5-0016246-0 | 11/7/2000 | 11/7/2000 | $120,028 | 43.32% | $51,996.13 | |
| 379 | 4776 | D02-0168490-2 | 11/8/2000 | 11/8/2000 | $14,801 | 43.32% | $6,411.79 | |
| 380 | 4734 | EN5-0016330-2 | 11/14/2000 | 11/14/2000 | $104,972 | 43.32% | $45,473.87 | |
| 381 | 3235 | EN5-0026236-8 | 11/15/2000 | 11/15/2000 | $60,000 | 43.32% | $25,994.17 | Incomplete file. Input date is date. |
| 382 | 3184 | EN5-0016376-5 | 11/20/2000 | 11/20/2000 | $120,028 | 43.32% | $51,996.13 | |
| 383 | 3170 | 274-0122083-8 | 12/5/2000 | 12/5/2000 | $135,036 | 43.32% | $58,497.60 | |
| 384 | 3260 | DO2-0169340-8 | 12/26/2000 | 12/26/2000 | $49,773 | 43.32% | $21,562.66 | |
| 385 | 3653 | DO2-0170364-8 | 1/2/2001 | 1/2/2001 | $14,799 | 43.32% | $6,410.93 | |
| 386 | 3640 | 274-0123379-9 | 1/22/2001 | 1/22/2001 | $60,014 | 43.32% | $25,998.06 | |
| 387 | 2801 | DO2-0172890-7 | 3/6/2001 | 3/6/2001 | $18,466 | 43.32% | $7,999.47 | |
| 388 | 2875 | DO2-0173316-2 | 4/12/2001 | 4/12/2001 | $153,032 | 43.32% | $66,293.37 | |
| 389 | 2338 | DO2-0173724-7 | 4/16/2001 | 4/16/2001 | $60,234 | 43.32% | $26,093.37 | |
| 390 | 2466 | DO2-0174174-7 | 4/25/2001 | 4/25/2001 | $38,562 | 43.32% | $16,705.06 | |
| 391 | 3627 | 588-0076237-8 | 6/14/2001 | 6/14/2001 | $112,777 | 43.32% | $48,855.00 | |
| 392 | 3531 | 588-0077968-1 | 6/20/2001 | 6/20/2001 | $15,783 | 43.32% | $6,837.20 | |
| 393 | 3576 | 605-5507342-2 | 6/20/2001 | 6/20/2001 | $6,070 | 43.32% | $2,630.51 | |
| 394 | 3946 | 588-0008592-8 | 7/23/2001 | 7/23/2001 | $92,064 | 43.32% | $39,882.12 | |
| 395 | 3854 | 588-0008680-1 | 7/25/2001 | 7/25/2001 | $37,500 | 43.32% | $16,245.00 | |
| 396 | 4622 | 588-0008919-5 | 7/30/2001 | 7/30/2001 | $18,366 | 43.32% | $7,956.15 | |
| 397 | 3665 | 588-0008729-6 | 8/1/2001 | 8/1/2001 | $56,160 | 43.32% | $24,328.51 | |
| 398 | 3672 | 588-0009219-7 | 8/10/2001 | 8/10/2001 | $112,988 | 43.32% | $48,946.40 | |
| 399 | 4774 | 588-0008868-2 | 8/6/2001 | 8/6/2001 | $18,822 | 43.32% | $8,153.69 | |
| 400 | 4142 | 588-0008975-3 | 8/14/2001 | 8/14/2001 | $56,350 | 43.32% | $24,410.82 | |
| 401 | 4512 | 588-0009219-7 | 8/29/2001 | 8/29/2001 | $37,420 | 43.32% | $16,210.34 | |
| 402 | 4093 | 588-0008530-7 | 9/12/2001 | 9/12/2001 | $134,544 | 43.32% | $58,284.46 | |
| 403 | 4146 | 588-0008529-9 | 9/12/2001 | 9/12/2001 | $37,549 | 43.32% | $16,265.23 | |
| 404 | 4103 | 588-0008967-7 | 9/21/2001 | 9/21/2001 | $37,297 | 43.32% | $16,157.06 | |
| 405 | 4083 | 588-0009667-7 | 9/26/2001 | 9/26/2001 | $75,596 | 43.32% | $32,748.19 | |
| 406 | 4418 | 588-0008982-0 | 10/18/2001 | 10/18/2001 | $75,686 | 43.32% | $32,787.16 | |
| 407 | 4282 | 588-0010296-2 | 10/16/2001 | 10/16/2001 | $75,596 | 43.32% | $32,748.19 | |
| 408 | 4083 | 588-0010210-3 | 8/29/2001 | 8/29/2001 | $37,747 | 43.32% | $16,352.67 | |
| 409 | 4273 | 588-0010441-4 | 10/24/2001 | 10/24/2001 | $97,478 | 43.32% | $42,227.47 | |
| 410 | 4972 | 588-0010426-5 | 10/24/2001 | 10/24/2001 | $74,578 | 43.32% | $32,307.19 | |

DC 2420398-1

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 415 | 4250 | 588-0010753-2 | 11/8/2001 | $38,347 | 43.32% | $16,611.92 | | | | | | | |
| 416 | 4202 | 588-0010827-4 | 11/14/2001 | $37,319 | 43.32% | $16,166.59 | | | | | | | |
| 417 | 3068 | 588-0011145-0 | 11/28/2001 | $75,985 | 43.32% | $32,916.70 | | | | | | | |
| 418 | 3138 | 588-0011292-4 | 12/5/2001 | $18,641 | 43.32% | $8,075.28 | | | | | | | |
| 419 | | | | | | | | | | | | | |
| 420 | | | | | | | | | | | | | |
| 421 | | | | | | | | | | | | | |
| 422 | | | | | | | | | | | | | |
| 423 | | | | | | | | | | | | | |
| 424 | Total Antidumping Duty | | | | | $2,566,572.68 | | | | | | | |

DC 2420398-1